UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY M. SMITH,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br><br>    Defendant. | Case No. 14-cv-05082-HSG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 16, 19 |

Plaintiff Ashley M. Smith seeks judicial review of Defendant Commissioner of Social Security's decision denying her application for disability insurance benefits and supplemental security income. Pending before the Court are the parties' cross-motions for summary judgment. For the reasons articulated below, the Court hereby GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

**I.     BACKGROUND**

**A.     Plaintiff's Background and Impairments**

Plaintiff has a history of congenital dysplasia of both hips, and osteoarthritis of the left hip with acetabular protrusio. Administrative Record ("AR") at 17. She had two surgeries during childhood and had total left hip replacement surgery in 2009, when she was 23. *Id.* at 17, 388. She told the Social Security Administration's ("SSA") consultative examiner that her hip and left knee hurt every day, ranging "from a 3-4/10 on a good day" to a "9/10 on a bad day." *Id.* at 15. At the hearing, Plaintiff testified that she can only sit or stand for ten minutes before having to change positions. *Id.* at 34. She claimed that she uses her cane for all walking, except when going from her bed to her bathroom. *Id.* at 34-35. Even with a cane, Plaintiff stated that she could walk less than a block. *Id.* at 34.

1    Plaintiff testified that she is easily distracted by her intense hip pain and cannot concentrate
2    for more than ten minutes. *Id.* at 33, 40. To help the pain, Plaintiff takes several medications
3    including Naprosyn, Neurontin, Percocet, and Tylenol with codeine. *Id.* at 314. She previously
4    took Ambien for her insomnia but stopped because the medication made her feel ill. *Id.* at 38-39.

5    Plaintiff lives with her mother and is not responsible for any of the cleaning or cooking.
6    *Id.* at 35. She also does not do any grocery shopping and is not responsible for any bills. *Id.* at
7    35-36. Plaintiff is capable of maintaining personal hygiene and has a chair in the shower. *Id.* at
8    36. She is capable of putting on her shirts and jackets on her own, but prefers that her mother put
9    on her pants, socks, and shoes because she has trouble bending over. *Id.* Plaintiff testified that
10   she ordinarily spends her days in bed and watches television. *Id.* at 39. She uses the computer
11   occasionally, but not often because her fingers start hurting. *Id.* She has a few friends, but stated
12   that she does not go out with them because of her pain. *Id.*

13   Plaintiff has a high school diploma. *Id.* at 31. She testified that she was not attending
14   school at the time of the hearing, but that she had taken classes at Martina's Adult School in the
15   past two years. *Id.* at 37. From December of 2006 until May of 2011, Plaintiff worked as a call
16   center representative for Tickets.com. *Id.* at 270. She worked four hours per day, three days per
17   week, and earned 11 dollars per hour. *Id.* at 271. Plaintiff testified that she had accommodations
18   while working at Tickets.com that allowed her to get up every fifteen minutes and walk around.
19   *Id.* at 32. For a short period of time in February of 2009, Plaintiff worked at home transcribing
20   claims and received three dollars per page. *Id.* at 44, 311.

21   Several medical professionals reviewed Plaintiff's impairments. On July 21, 2011, Dr.
22   Norman Livermore, Plaintiff's treating surgeon, stated that Plaintiff "cannot walk, stand, or sit for
23   extended periods of time due to chronic bilateral hip pain . . . ." *Id.* at 441. Dr. Livermore found
24   that "long term disability is appropriate." *Id.*

25   On June 14, 2012, Dr. Gila Wildfire determined that Plaintiff could sit for fifteen minutes
26   at a time before needing to stand or walk, could walk less than one city block without rest or pain,
27   and could stand for less than ten minutes before needing to sit or walk around. *Id.* at 483. Dr.
28   Wildfire also found that Plaintiff could sit, stand, or walk for a total of less than one hour each in

2

an eight-hour day, and could "rarely" lift less than ten pounds. *Id.* at 483-84.

In July of 2011, Dr. Calvin Pon examined Plaintiff at the request of the SSA. *Id.* at 436. Dr. Pon found some atrophy of Plaintiff's left lower extremity and reported that her left leg is shorter than her right by three quarters of an inch. *Id.* at 437. Dr. Pon opined that Plaintiff could stand or walk for a total of two to four hours, and sit for a total of six hours, during an eight-hour work day. *Id.* at 438.

Also in July of 2011, Dr. Mathilde Weems conducted a psychiatric examination of Plaintiff at the request of the SSA. *Id.* at 439. Dr. Weems diagnosed Plaintiff with an "[a]djustment disorder with depressed mood" and "[c]hronic pain with psychological factors." *Id.* at 440. She opined that, without more aggressive intervention, Plaintiff was unlikely to improve in the next 12 months. *Id.*

### B.     Procedural History

On April 20, 2011, Plaintiff filed an application for disability insurance benefits and supplemental security income under the Social Security Act. *Id.* at 173. The SSA denied both of Plaintiff's applications initially and upon reconsideration. *Id.* at 109, 116. Plaintiff requested a hearing before an administrative law judge ("ALJ"), and her case was heard by ALJ Mary Parnow on February 21, 2013. *Id.* at 27. In her pre-hearing memorandum, Plaintiff alleged a disability onset date of August 1, 2009. *Id.* at 315.

ALJ Parnow issued a decision finding that Plaintiff was not disabled on March 22, 2013. *Id.* at 9. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for further review on September 15, 2014. *Id.* at 1. Plaintiff filed this action on November 18, 2014, Dkt. No. 1, and moved for summary judgment on April 13, 2015, Dkt. No. 16 ("Pl. Mot."). On June 10, 2015, the Commissioner filed a cross-motion for summary judgment. Dkt. No. 19 ("Def. Mot.").

## II.     LEGAL STANDARD

### A.     Standard Of Review

The ALJ's denial of benefits may be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Vertigan v. Halter*, 260

1    F.3d 1044, 1049 (9th Cir. 2001). Evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Charter*, 108 F.3d 978, 980 (9th Cir. 1997). To determine whether substantial evidence exists to support the ALJ's decision, the court examines the administrative record as a whole and considers evidence both supporting and detracting from the decision. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). A court may not reverse the ALJ's decision on the basis of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

### B. Standard For Determining Disability Benefits

To qualify for disability benefits under the Social Security Act, a claimant must be "disabled." 42 U.S.C. §§ 423(a)(1)(E), 1382a(1). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the burden of making out a prima facie case of disability. *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). However, SSA "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Social Security disability cases are evaluated using a five-step, sequential evaluation process. 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is engaged in "substantial gainful activity." *Id.* § 416.920(a)(4)(i). A person is involved in "substantial work activity" if she engages in work that involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is defined as "work usually done for pay or profit," regardless of whether the claimant actually receives a profit. *Id.* § 416.972(b). If the claimant is engaged in substantial and gainful activity, she is not disabled; otherwise, the evaluation proceeds to step two.

At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments that is severe. *Id.* § 416.920(a)(4)(ii). A "severe" impairment is defined as one that significantly limits an individual's ability to perform basic work activities. *Id.* § 416.920(c). If a claimant does not have a severe impairment, the claimant is not disabled and is not entitled to disability benefits, but if the impairment or combination of impairments is severe, the evaluation proceeds to step three.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements listed in 20 C.F.R. Part 404, Subpart P, App. 1. *Id.* § 416.920(a)(4)(iii). If the claimant's condition meets or exceeds the requirements of a listed impairment, the claimant is disabled; if not, the analysis proceeds to step four.

At step four, the ALJ must first determine the claimant's residual functional capacity ("RFC") in view of the claimant's impairments and the relevant medical and other evidence in the record. *Id.* § 416.920(e). Based on the RFC, the ALJ then determines whether the claimant is able to perform the requirements of her "past relevant work."[1] *See id.* § 416.920(a)(4)(iv), (f). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled; otherwise, the evaluation proceeds to step five. *Id.* § 416.920(a)(4)(iv).

At step five, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled. *Thomas*, 278 F.3d at 955. Taking into account a claimant's age, education, vocational background, and RFC, the Commissioner must show that the claimant can perform some work that exists in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c).

**III.   DISCUSSION**

   **A. The ALJ's Decision**

In her March 22, 2013 decision, the ALJ applied the five-step sequential analysis articulated above. The ALJ determined at step one that Plaintiff did not engage in substantial

---

[1] "Past relevant work" means substantial gainful activity performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last fifteen years or fifteen years prior to the alleged disability onset date. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965.

5

1  gainful activity since her alleged disability onset date. AR at 14. At step two, the ALJ found that
2  Plaintiff's hip problems constituted a "'severe' physical impairment," but that there was no severe
3  impairment of the knee. *Id.* at 15. She assigned no weight to Dr. Weems' psychiatric opinion and
4  found that Plaintiff has "no mental impairment that more than minimally affects her ability to
5  perform basic mental work activities." *Id.* at 15-16. In making that finding, the ALJ considered
6  the four broad functional areas set out in the disability regulations for evaluating mental disorders,
7  or "paragraph B" criteria, and found that Plaintiff has "mild limitations in activities of daily living,
8  social functioning, and concentration, persistence, or pace." *Id.* at 16. She found that, for the
9  fourth broad functional area, Plaintiff did not experience extended episodes of decompensation.
10 *Id.*

At step three, the ALJ concluded that Plaintiff's severe hip impairment did not meet the severity of one of the listed impairments because there was no "evidence of the requisite inability to ambulate effectively." *Id.*

The ALJ next determined that Plaintiff retained the RFC to perform "light work" as defined in the Code of Federal Regulations.[2] *Id.* at 16. The ALJ determined that Plaintiff was able

> to stand and/or walk for a total of 2 hours during an 8 hour workday with a cane; sit for a total of 6 hours during an 8 hour workday; rarely to occasionally crouch, kneel, squat, and crawl; occasionally climb stairs; and never climb ladders, ropes, or scaffolds. In addition, the claimant cannot use her lower extremities for operating foot controls. She can lift and carry 10 lbs. frequently and up to 20 lbs. occasionally.

*Id.* In assessing Plaintiff's RFC, the ALJ assigned the most weight to Dr. Pon's opinion and discounted both Dr. Livermore's and Dr. Wildfire's opinions. *Id.* at 19. The ALJ found Plaintiff's testimony about her pain symptoms partially credible, but did not give weight to her allegations about concentration. *Id.* at 18.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.926(b).

Based on this RFC, the ALJ determined at step four that Plaintiff was capable of performing past relevant work as a reservation agent. *Id.* at 19. Alternatively, the ALJ found at step five that there were other jobs existing in the national economy that Plaintiff was also able to perform. *Id.* at 20. Considering Plaintiff's age, education, and work experience, and her RFC, the ALJ found that Plaintiff was capable of performing the requirements of two representative occupations: "Telemarketer" and "Order Clerk." *Id.* The ALJ concluded that Plaintiff was not disabled and denied her applications. *Id.* at 20-21.

Plaintiff argues that the ALJ's decision was infected with a number of errors, namely: (1) the ALJ improperly discredited Plaintiff's testimony regarding the symptoms and severity of her disability; (2) the ALJ erred in rejecting the opinions of treating surgeon Dr. Livermore; (3) the ALJ erred in rejecting the opinions of examining physician Dr. Wildfire; (4) the ALJ erred in rejecting the opinions of examining psychiatrist Dr. Weems; (5) the ALJ failed to consider Plaintiff's mild mental impairments when assessing her RFC; and (6) substantial evidence does not support the ALJ's findings at steps four and five. As described fully below, the Court finds that the ALJ inadequately assessed Plaintiff's RFC. Furthermore, because the defective RFC formed the basis for the ALJ's conclusions at steps four and five, the error was not harmless.

**B.     The ALJ's Assessment Of Plaintiff's RFC Was Inadequate**

**1.     Credibility of Plaintiff**

The ALJ must engage in a two-step analysis when evaluating a claimant's credibility. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 1036 (internal quotation marks omitted). Second, if the claimant has met the first step and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks omitted).

The ALJ may consider many factors when weighing credibility, including "reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and

unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks omitted). An ALJ's assessment of a claimant's credibility and pain severity is entitled to great weight. *See Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989). If the ALJ's credibility finding was supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

When determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of her alleged symptoms." AR at 18. At the same time, the ALJ did not find Plaintiff's statements to be fully credible. *Id.* She found that Plaintiff's claims about the severity of her limitations on sitting, standing, and walking were only partially credible due to inconsistencies in her testimony. *Id.* First, while Dr. Livermore noted that Plaintiff went to school for seven hours a day, Plaintiff testified that she attended for two hours a day. *Id.* Second, Plaintiff testified that she uses her cane for all her walking. However, Dr. Livermore's clinical notes stated that she did not use her cane inside, but did use it when she went out to the mall. *Id.* Finally, the ALJ found that Plaintiff's credibility was damaged by her belated testimony about her self-employment, which she did not mention until asked at the hearing. *Id.* at 19.

Plaintiff argues that the ALJ erred in finding that her statements concerning the intensity, persistence, and limiting effects of her physical symptoms were not entirely credible. Pl. Mot. at 12-14. Plaintiff contends that the ALJ improperly discredited her testimony because her condition did not remain static. *Id.* at 12. Plaintiff cites to a disability report in which she stated that she had to use her cane more due to the worsening pain. *Id.*; AR at 287. However, Plaintiff went to her appointment with Dr. Pon without her cane later that same year, after the disability report was created. AR at 436. The Court finds that the conflicts in Plaintiff's statements were permissible reasons to discount her credibility. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding that, in determining credibility, an ALJ may consider the claimant's prior inconsistent statements). The ALJ noted specific inconsistencies in Plaintiff's testimony. AR at 18-19. The Court finds these to be sufficiently clear and convincing reasons for partially discrediting

8

Plaintiff's testimony.

Additionally, the ALJ found Plaintiff's statement that she could concentrate for only ten minutes at a time due to her hip pain inconsistent with the fact that she attended school for seven hours a day after her alleged disability onset date and worked at Tickets.com for up to six hours a day. *Id.* at 18. It is reasonable to conclude that Plaintiff would not be able to successfully perform both her academic and work responsibilities if she were only able to concentrate at ten-minute intervals. *See, e.g.*, *Wager v. Barnhart*, 208 F. App'x 536, 538 (9th Cir. 2006) (holding that the ALJ properly discredited the claimant's testimony regarding his severe limitations in sitting, standing, and walking because it was inconsistent with his activities). Plaintiff passed both of the classes she enrolled in, and there is no evidence, other than her own testimony, of negative consequences at work resulting from trouble concentrating. The Court finds this to be another clear and convincing reason for partially discrediting Plaintiff's testimony.

Plaintiff also argues that the ALJ "essentially sandbagged" Plaintiff because she did not ask Plaintiff to address the inconsistencies in her testimony before issuing her decision. Pl. Mot. at 9, 12-13. In support of this argument, Plaintiff cites to 20 C.F.R. § 404.900(b), titled "Administrative law judge hearing procedures—general," which states, "At the hearing, the administrative law judge *looks fully into the issues*, questions you and the other witnesses, and accepts as evidence any documents that are material to the issues" (emphasis added). Plaintiff contends that the regulation's description of general procedures at an ALJ hearing requires an ALJ to specifically identify and ask claimants about each inconsistency that arises in their testimony. Plaintiff does not cite any case law supporting this contention, and the Court declines to read this requirement into 20 C.F.R. § 404.900(b), as Plaintiff urges.

The Court concludes that the ALJ's credibility finding regarding Plaintiff's testimony was supported by substantial evidence in the record.

### 2. Dr. Livermore's Opinion

The Ninth Circuit distinguishes "among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining

9

physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a treating physician is entitled to greater weight than the opinion of a non-treating physician. *Id.* However, a treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). In order to properly reject an uncontradicted opinion of a treating or examining doctor, the ALJ must state "clear and convincing reasons" for doing so. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted, an ALJ may reject the treating physician's opinion if it states "specific and legitimate reasons" that are supported by substantial evidence. *Id.*

The Court finds that substantial evidence does not support the rejection of Dr. Livermore's opinion. First, the record is not sufficiently developed to determine whether Dr. Livermore's opinion that Plaintiff cannot sit for "extended" periods of time is contradicted by Dr. Pon's opinion that Plaintiff can sit for a total of six hours at work. Plaintiff contends that Dr. Livermore's opinion that Plaintiff could not sit for "extended" periods of time means that she could not continuously sit for long periods. Pl. Mot. at 8. As a result, Plaintiff argues, Dr. Pon's opinion did not contradict Dr. Livermore's opinion because Dr. Pon did not comment on how long Plaintiff could *continuously* sit. *Id.* The ALJ did not say whether she thought the two opinions contradicted each other. A clear explanation of whether the ALJ believes the treating physician's opinion is contradicted or uncontradicted is critical because, as noted above, the applicable standard of review hinges on that determination. Further proceedings are necessary for the ALJ to state whether she believed Dr. Livermore's opinion was contradicted and explain the basis for that belief.

Second, based on the current record, the ALJ's proffered reason for disregarding Dr. Livermore's opinion is neither specific and legitimate nor clear and convincing. The ALJ's sole reason for rejecting treating surgeon Dr. Livermore's opinion—that Dr. Livermore's assessment that Plaintiff could not sit for "extended" periods of time was inconsistent with his notes reflecting that she went to school and worked—is not supported by substantial evidence in the record. While the ALJ stated that Dr. Livermore's notes indicated Plaintiff was "sitting four to six hours per day"

10

at school and work, AR at 19, Dr. Livermore's notes do not say anywhere that he understood Plaintiff to be sitting continuously for extended stretches while at school and work. On March 1, 2010, Dr. Livermore observed that Plaintiff was attending school from "8:05 to 2:45" five days a week. *Id.* at 382. Dr. Livermore also generally noted in September 2010 that Plaintiff was working four days per week, four to six hours per day at a call center where she "sits." *Id.* at 381. In addition, Plaintiff provided evidence that she changed her position throughout the day while she was at work, and it is plausible that she did so in school. *See Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (holding that inferences that claimant was seated during his activities at work did not constitute substantial evidence of claimant's ability to sit for six hours in an eight-hour workday). The current record does not contain substantial evidence to support the ALJ's conclusion that Dr. Livermore's notes are internally inconsistent. Further proceedings are necessary to develop the record on this issue.

Based on the current state of the record, the Court finds that the ALJ erred by not incorporating Dr. Livermore's opinion into her assessment of Plaintiff's RFC, and by not considering Plaintiff's ability to sit continuously when making that assessment. Moreover, the ALJ's legal error on this issue was not harmless. In her RFC assessment, the ALJ found that Plaintiff could do "light work." AR at 16. Under the SSA regulations, "if someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b). "In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals." *Policy Interpretation Ruling Titles II & XVI: Determining Capability to do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*, SSR 96-9P (S.S.A. July 2, 1996). Under the regulations, then, the ALJ's conclusion that Plaintiff could perform "light work" necessarily means that Plaintiff can also perform "sedentary work." But Dr. Livermore's medical opinion indicates that Plaintiff may not be capable of performing sedentary work, as defined by the SSA, because of her inability to sit for "extended" periods of time.

11

1    Accordingly, the ALJ's RFC assessment was materially impacted by her erroneous discounting of
2    Dr. Livermore's medical opinion.

### 3. Dr. Wildfire's Opinion

Plaintiff next argues that the ALJ erroneously rejected examining physician Dr. Wildfire's corroborating opinion that Plaintiff could not sit for extended periods of time. Pl. Mot. at 10-11. Dr. Wildfire stated that Plaintiff could sit for 15 minutes at a time and for a total of less than one hour in an eight-hour workday. AR at 483-84. The ALJ noted that this opinion was contradicted by Dr. Pon's opinion, which determined that Plaintiff could sit for a total of six hours in an eight-hour workday. *Id.* at 17-18. Under *Lester*, the ALJ's decision to reject Dr. Wildfire's opinion must be upheld if the ALJ stated a specific and legitimate reason for the rejection. 81 F.3d at 830-31.

The ALJ gave two reasons for rejecting Dr. Wildfire's opinion. First, the ALJ noted that Dr. Wildfire's assessment was based on a one-time examination. AR at 19. By definition, an examining opinion is a one-time examination. *See Giather v. Colvin*, No. 12-cv-10933-DTB, 2014 WL 632371, at *3 (C.D. Cal. Feb. 18, 2014). Adoption of the ALJ's reasoning would result in the rejection of virtually all examining opinions. *See Sprout v. Astrue*, No. 09-cv-01676-SKO, 2011 WL 300210, at *7 (E.D. Cal. Jan. 27, 2011) ("The suggestion that an opinion is inadequate simply because it resulted from a onetime examination leads to the conclusion that all examining physician opinions should be discarded."). The Court finds this an improper reason for rejecting Dr. Wildfire's opinion.

Second, the ALJ pointed out that Dr. Wildfire appeared to have taken Plaintiff's subjective complaints at face value when forming her medical opinion. AR at 19. Dr. Wildfire marked "easy distractibility" and "difficulty with concentration" as Plaintiff's psychological conditions. *Id.* at 483. However, as described above, the ALJ found that Plaintiff's testimony about her concentration was inconsistent with other evidence in the record. The Court finds that this reason is a proper basis for discounting Dr. Wildfire's opinion. *See Tonapetyan*, 242 F.3d at 1149 (holding that the ALJ did not err in disregarding a physician's report based on a claimant's own subjective complaints that have been properly discounted).

### 4. Dr. Weems' Opinion

Dr. Weems, an examining psychiatrist, diagnosed Plaintiff with an adjustment disorder with depressed mood and chronic pain. Based on those impairments, Dr. Weems opined:

> [Plaintiff] is able to perform some simple tasks but has marked difficulty with complex tasks as she is highly distracted by her pain. She can accept instructions from supervisors but may need some instructions repeated and some supervision in the workplace. It is likely that she would have difficulty in the workplace keeping up with the pace of a typical work environment and needing to take multiple breaks. It is likely that she would have trouble sustaining focus for longer than 30 minutes to an hour at a time and tolerating the stress encountered in a typical workplace setting.

AR at 440.

The ALJ rejected Dr. Weems' opinion because it was not supported by any other evidence in the record. *Id.* at 15. She found that the record did not support a finding that Plaintiff had depression. *Id.* at 15-16. Plaintiff did not report any symptoms of depression to her treating physicians and denied feeling depressed when asked in March of 2012. *Id.* at 500. Plaintiff told a physician at Contra Costa Health Services that she intended to see a psychiatrist, but there is no evidence that she followed up with one, and Plaintiff testified that she was not receiving any treatment for mental health issues. *Id.* at 40, 495. Moreover, there is no evidence that Plaintiff did not have access to treatment if she did have a mental condition. *Cf. Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). In fact, the evidence indicates that Plaintiff was prescribed Zoloft, but she testified that she never took it, AR at 40, which suggests that her mental condition is not disabling. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) ("Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits.").

Because Dr. Weems' opinion is not supported by any record of mental health treatment, hospitalization, psychotropic medication, or any other clinical findings, the Court finds that the ALJ properly rejected it based on clear and convincing reasons. *See Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

13

### 5.  Plaintiff's Mild Mental Limitations

In order to properly determine a claimant's RFC, the ALJ must consider the claimant's mental limitations in four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *See* 20 C.F.R. § 404.1520a(c)(3). The Code of Federal Regulations requires an ALJ to consider all of the claimant's limitations when assessing her RFC, including any non-severe mental limitations. *Id.* § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity."). In an unpublished opinion involving circumstances similar to those present here, the Ninth Circuit held that an ALJ erred by failing to include the "mild" mental limitations caused by the claimant's post-traumatic stress disorder in the RFC assessment. *Hutton v. Astrue*, 491 F. App'x 850, 850-51 (9th Cir. 2012).

In this case, the ALJ found that Plaintiff did not have a severe mental impairment at step two of her analysis. However, the ALJ did find that Plaintiff has "mild limitations in activities of daily living; social functioning; and concentration, persistence or pace." AR at 16. While the ALJ stated that her assessment of Plaintiff's RFC "reflects the degree of limitation I have found in 'paragraph B' mental function analysis," *id.*, the record does not demonstrate that the ALJ considered these mild mental limitations when assessing her RFC.

Defendant argues that the ALJ was not required to include mild mental limitations in her RFC assessment because the ALJ properly rejected Dr. Weems' psychiatric opinion and discredited Plaintiff's mental condition allegations. Def. Mot. at 7. While the ALJ was not required to include properly rejected evidence, she could not disregard her own finding that Plaintiff had mild mental limitations in three out of the four broad functional areas, AR at 16. *See* 20 C.F.R. § 404.1545(a)(2); *Hutton*, 491 F. App'x at 850 (holding that while the ALJ was free to reject the claimant's testimony as not credible, he could not disregard his own finding that the claimant had some mild limitations in concentration, persistence, or pace); *Kramer v. Astrue*, No. 12-cv-05297-MLG, 2013 WL 256790, at *3 (C.D. Cal. Jan. 22, 2013) (following *Hutton*) . The current record is unclear as to whether the ALJ properly considered the claimant's mild mental

limitations when assessing her RFC. *See Curtis v. Comm'r of Soc. Sec.*, 584 F. App'x 390, 391 (9th Cir. 2014) ("Although the ALJ wrote that he considered '[a]ll impairments, severe and non-severe,' in determining [the claimant's] residual functional capacity (RFC), we are unable to determine on the record before us whether the ALJ adequately considered [the claimant's] mental health limitations."). The Court therefore finds it necessary to remand for further proceedings to fully and correctly assess Plaintiff's RFC.

### C. Because She Relied On An Inadequately Assessed RFC, The ALJ's Findings At Step Four And Step Five Are Erroneous

An ALJ incorporates the claimant's RFC in the analysis at steps four and five. As described above, the ALJ's assessment of Plaintiff's RFC was inadequate. Accordingly, the ALJ's analysis at steps four and five was also defective.

### D. Remand Is Necessary

The Court has discretion to remand or reverse and award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, where there are outstanding issues that must be resolved before a final determination can be made, and it is not clear from the record that Plaintiff is disabled, remand is appropriate. *See id* at 593-96.

Here, as described above, there are outstanding issues that must be resolved before a final disability determination can be made. For purposes of clarity, the Court sets forth the scope of the remand proceedings as follows: (1) the ALJ shall consider whether Dr. Livermore's opinion is contradicted and, based on her answer to that threshold question, apply the relevant legal standard to determine whether the opinion should be discounted, further developing the evidentiary record where necessary; (2) the ALJ shall reassess Plaintiff's RFC in light of Dr. Livermore's opinion if there is no adequate basis for rejecting it; (3) the ALJ shall reassess Plaintiff's RFC in light of her mild mental limitations; and (4) the ALJ shall revisit her analysis at steps four and five based on the newly assessed RFC.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion is GRANTED and Defendant's motion is DENIED. The action is REMANDED for further administrative proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: December 16, 2015

HAYWOOD S. GILLIAM, JR.
United States District Judge